## THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| JIM TRAKAS | ) | CASE NO: 1:18 CV 1798 |
| | ) | |
| PLAINTIFF | ) | JUDGE:  Donald Nugent |
| | ) | |
| Vs. | ) | **PLAINTIFF'S BRIEF IN RESPONSE** |
| | ) | **TO DEFENDANT'S MOTION FOR** |
| CONSERVATIVE ALLIANCE | ) | **SUMMARY JUDGMENT** |
| POLITICAL ACTION COMMITTEE, et al | ) | |
| | ) | |
| DEFENDANTS | ) | |
| | ) | |

Now comes the Plaintiff, and by and through the undersigned counsel, and does hereby

submit the attached and incorporated brief in response to the Defendants' Motion for Summary

Judgment.  As can clearly be seen by the arguments that follow, there exists, to say the least,

serious issues of material fact which warrant submission of this matter to a jury. Pursuant to the

arguments that follow the motion should be denied.

Respectfully submitted,

*/s/ David J. Horvath*
David J. Horvath  0055989
7100 E Pleasant Valley Rd.
Suite 110
Independence, OH  44131
216-986-0860
djhorvath@hotmail.com

**SERVICE**
    A true and accurate copy of this has been served upon Christopher J. Hogan this 2nd day
of December, 2019 by way of email at: Hogan@litohio.com, and this Court's electronic filing
system and Local Rule

*/s/ David J. Horvath*

## **INTRODUCTION**

This is a matter pertaining to the utterance of statements.  The Defendants have attempted to couch the utterance of these statements into arguments pertaining to opinion, truth, or for that matter state they are subject to privilege due to Mr. Trakas' status as a "public official".  In any of these arguments, the law and application of same is insufficient to warrant summary judgment.  We need only look to the statements as uttered for support of the denial of summary judgment.  The statements that were made were clear, **issued as statements of fact** and are clearly defamatory on their face.  An accurate representation of the statements follows:

- Defendants' Exhibit A1. -  This statement claims that Jim Trakas described **his** for profit online charter school, as a "cash cow".  This statement makes direct reference to ownership in Provost Academy's operating company, EdisonLearning Company.  It is clear from the facts, and as **known to** the Defendants, that Mr. Trakas had no ownership in EdisonLearning.  Rather, his organization the Board of Education of Provost Academy, who held a legal charter from the State of Ohio, merely sat as a board member for this educational institution.

- This same advertisement claimed that Jim was "enriching" himself at our kids' expense. Nothing could be farther from the truth.  Again, Mr. Trakas owned no part of EdisonLearning.  He was merely paid from $75.00 to $125.00 for each board meeting that he attended. (See Affidavit of Trakas).  Notwithstanding, this ad claims that the Provost Academy "Overbilled" in the State of Ohio by $800,000.  It thereafter clearly states that $800,000 of "your tax dollars (is) lining **their** (plural possessive) pockets". This is a clear indication that Trakas himself profited from supposed over billing to the State of Ohio.  It is a direct statement that Mr. Trakas received State money improperly. This is not stated as a matter of opinion.  It is stated as a matter of fact.

- The same advertisement states that Trakas was "livin' it up on our dime…"  This is entirely false.  Again, Mr. Trakas made from $75.00 to $125.00 for each meeting that he attended.  He took no part in profit or over billing as suggested by this article.  He has not done anything that could be deemed as "enriching himself".  Furthermore, this particular

article makes a rather profound statement.  The exact quote is **"these are _facts_ about Jim Trakas"**.  Obviously there is no opinion expressed here.  In fact, the Defendants have gone out of their way to claim these are "facts" which **obviates any argument** that this particular advertisement contains opinion.

- Defendants' Exhibit A2.  This article clearly states that Jim Trakas "**scammed us before**".  Nothing in this article states this is a matter of opinion...

- This advertisement even stated that Jim "steered millions in taxpayers' dollars to his charter school …."  This particular statement is patently false and the Defendants were well aware of this. (See Affidavit of Trakas)(See "opposition research").

- This ad also claims that Jim is "beholden" to a former Ohio Speaker investigated for taking illegal kickbacks.  Defendants are well aware of Mr. Householder's vindication and are well aware that Mr. Trakas had very little actual association with Mr. Householder during this particular period. (Trakas Affidavit)

- Defendants' Exhibit A3.  This advertisement claims, without any proof, that Mr. Trakas is "backed by" Larry Householder.  This advertisement clearly states that Jim is associated with political corruption including bribery.  On its face it claims that Mr. Householder "trades legislation for campaign contributions".  This is criminal activity.  And the ad clearly implicates Jim Trakas of criminal activity.

- This advertisement, also has a picture of Mr. Householder and Mr. Trakas.  Underneath this picture it claims that Jim is a "crony" of Mr. Householder.  It claims that Mr. Trakas was somehow involved with the illegal activities.

- Defendants' Exhibit A4.  This advertisement specifically and with purpose claims that **Jim Trakas "lied to us"**.  There is absolutely no proof of this particular assertion.  This has the effect of claiming Mr. Trakas is a liar and has a dishonest reputation.

- This advertisement also lacks any language claiming that is opinion or otherwise based on general knowledge of the public.  It is a direct statement attacking his reputation for truth or veracity.

- **Mr. Everhart** actually worked on Mr. Trakas' campaign, and at the time even **produced advertisements in support of Mr. Householder** during this particular "investigation".  For Mr. Everhart to claim that he believes these statements are true and accurate is an

absolute lie.  Mr. Everhart clearly knew that Mr. Householder had been completely exonerated of any activities complained of in this advertisement.

All in all these advertisements lack any foundation which would provide support to the Defendants in their arguments.  There is nothing in any of these advertisements which states "in our opinion" or something to the effect of, "it is generally accepted", or anything else which might allow the reader to ascertain these statements are those of opinion and not fact.  The Defendants made it clear that these "are facts" about Jim Trakas.   Each and every one of these circulars was intended to abase Mr. Trakas' reputation and effect his chances for election.  Each and every one of these articles attacked his integrity and fitness for office.  The acts were even personal enough to claim that he was associated with criminal activity.

Furthermore, the **Defendants were well aware of the falsity of these statements**.  The involvement of Mr. Everhart in the campaigns of Mr. Trakas and Mr. Householder speaks volumes as to why these circulars should not have been published and the statements contained therein were uttered with disregard for their truth.  These are personal attacks and not statements of opinion and they were made with actual malice and intent to damage his reputation.

Contrary to the arguments of the Defendants, Mr. Trakas has alleged, in his Complaint, that his general reputation has been irreparably damaged by way of these advertisements.  We are not "pigeon holed" into an argument of lost wages from his reelection.  Plaintiff reincorporates all of the arguments that are presented in his motion in response to the Defendants' motion to strike his expert report.  The First Amendment does not protect these statements.  Notwithstanding the Defendants conveniently argue this point, and direct the Court's attention only to the loss of salary and benefits.  Defendants entirely avoid the arguments that pertain to his general reputation and arguments of defamation per se.

## ARGUMENTS PERTAINING TO OUTSIDE COUNSEL REVIEW AND APPROVAL

Mr. Trakas will address the issuance of the Tyrrell Affidavit first as it appears to be the primary argument.  Mr. Trakas would submit a herein that this affidavit should be stricken.  It is obviously an attempt to submit an expert report.  Although this Court has granted the Defendants leave with which to obtain an expert report, the affidavit of Mr. Tyrrell goes well beyond the scope of same.  **Mr. Tyrrell presents an opinion on law** and not one of fact or anything else which this Court could consider as instructive.  It is inappropriate under new rules of evidence.

Mr. Tyrrell claims that he reviewed the source materials and relied upon the vendor's credibility.  (Brief at Page 2).  Mr. Tyrrell claims that Speaker Householder was the subject of a Federal investigation in 2002 and 2004.   However, the affidavit clearly avoids the salient fact that Mr. Trakas had almost no political dealings with Mr. Householder during this time and was quite distanced from him. (See Affidavit of Trakas).  Ignoring this obvious deficiency Defendants state only that Trakas and Householder had served in the House at the same time.  Thus, the affidavit is based upon conjecture and speculation.  Nothing else is presented.

Mr. Tyrrell cites certain problems that were associated with Mr. Householder's service in the House.  However, and as is well known to him, none of these particular investigations had anything to do with Mr. Trakas.  Even if we assume the statements made about Speaker Householder are true, we can clearly see that the Defendants and Mr. Tyrrell being disingenuous.

At the top of Page 3 Defendants reference a Columbus Dispatch article of November 1, 2011.  Therein it is clear that the GOP strategists are rebuilding their career **after being cleared** of any accusations.  It is clearly understood by Mr. Tyrrell and others that no clandestine activities had been undertaken or even proved. The reiteration of defamatory statements, or statements that hurt the reputation of Mr. Householder and Mr. Trakas were grossly negligent to

say the least.  Moreover, a review of the submitted "Research Finding Report" (also referred to herein as the "opposition research"), attached as Exhibit B-10 to Defendant's Brief, when read in it's entirely clearly shows that the activities were found to be nonexistent.

This is also an overt attempt to "sanitize" the process of publication and utterance of defamatory material.  The Defendants are essentially claiming that they have a "note from their mother" authorizing them to utter these statements.  Defendants are stating that their legal counsel looked over this matter and determined nothing defamatory was being published.  This does not mean that Mr. Tyrrell is correct.  His opinion is nothing more than a paid for exercise in futility.  In other words, Defendants are stating that they paid a lot of money to an attorney, who works for them, to provide a safety net.  However, the Defendants provide nothing in the form of communications between them and their attorneys.  They only produce an affidavit of counsel issued several years after the fact which is nothing more than an apparent summation of their dealings.  We must assume from the submission of this affidavit that the Defendants have waived their attorney / client privilege and that communications involved in the production of this document are most likely the subject of further discovery.  Of course this is an additional matter for concern after a ruling on the pending motions.

## REGARDING THE PARTICULAR ADS DISCUSSED BY DEFENDANTS

Circular Involving Charter Schools.

Apparently the Defendants take issue with a modest rephrasing of the Exhibit A1.  The statement made about Mr. Trakas is that **he** is alleged to have "lined his pockets" with money.  The Defendants cry foul stating that they used of the word "their" thus minimizing the effect on Mr. Trakas.  However, this advertisement clearly associates Mr. Trakas and his entity with Provost Academy's management company, EdisonLearning, a company that Trakas and the

Board had zero financial stake in, and by law, could not have a financial stake in.  The use of the word "their" is plural and thus includes Mr. Trakas.  This is specifically supported by the next bullet point on Page 4 where it is claimed that "shameful Jim Trakas is enriching himself at our kids' expense".  The ad clearly states that Trakas was lining **his** pockets and "livin' it up" on money supplied by taxpayers.

Regarding Association with Householder

The Defendants stated that Mr. Trakas has "scammed us before" and is being backed by a "corrupt former Ohio Speaker".  Both of these statements are false.  Mr. Trakas never scammed taxpayers.  He voted for a sales tax increase that was part of a budget bill.  (See Trakas affidavit) There is nothing which constitutes a "scam" on the taxpayers.  Furthermore, Mr. Householder was vindicated of any alleged corrupt activity.  The Defendants were well aware of this at the time these statements were published.  To refer to Mr. Trakas as a crony of a corrupt politician, and guilty of scamming taxpayers is patently false and simply defamatory on its face. Furthermore, it was not and cannot be stated as a matter of opinion when the Defendants were well aware of Mr. Householder's exoneration.  Defendants, made these claims sans any prefatory language indicating opinion, which shows the statements were made with purpose, and malice.

## ELEMENTS OF A DEFAMATION CLAIM

The primary argument made by the Defendants is that Mr. Trakas is a public figure.  As such they claim actual malice need by proven by clear and convincing evidence.  Although this may or may not be the standard at trial, Mr. Trakas is only required to make a prima facie case of defamation in order to survive summary judgment.  This of course assumes that malice is the actual standard here.  The Defendants have gone through great lengths to establish him as a public figure merely by running for office.  Although the case law on this matter is fairly suspect,

it is clear that malice or reckless disregard is apparent.  If we assume the recitation of a defamation claim as set forth on Page 5 of the brief, we can address the issues of public figure and malice.  In doing so we can clearly see that the case law cited by Defendants is not as absolute, or even as persuasive as illustrated in the brief.

The Defendants rely on *Monitor Patriot Co. v Roy*, 401 U.S. 265 (1971) in support of their contention that candidates for public office are subject to a different standard.  However, this case provides contrary guidance as to why the Defendants statements have "crossed the line" in regards to knowledge or reckless disregard.  The precise quote from *Monitor* is as follows.

> As a matter of Constitutional Law, a charge of criminal conduct, no matter how remote and time replaced, <u>can never be irrelevant</u> to a candidate's fitness for purpose in regards to applying the knowledge of falsehood or reckless disregard rule stated in New York Times.  *Monitor* at 267.  Furthermore, the Supreme Court went on to say that the clash of reputations "is the staple of election campaigns, and damage to reputation, is of course, **the essence of libel**".  (Emphasis added).  In regards to this particular proposition of law the Supreme Court **refrained from opining on whether or not a candidate may have full recourse against the other for statements made in a defamation cause of action.**  *Id.* (Emphasis) This brings us to Defendants' arguments as pertains to *New York Times v Sullivan* 376 U.S. 254 (1964).

Essentially the *New York Times* decision claims that defamatory conduct as it pertains to official reputation requires a proving of actual malice.  *New York Times* at 255.  In defining actual malice the United States Supreme Court stated that it may be proven by knowledge of falsity, or some proof that the statements were uttered with reckless disregard of the truth.  *New York Times* at 280.  Unfortunately, the Court did not opine on the standard of proof pertaining to reckless disregard.  However, other cases cited by the Defendants provide some guidance.

In the second case cited by Defendants, *McKimm v Ohio Elections Commission* 89 Ohio State 3d 139 (2000) we find that the Supreme Court of Ohio examined Federal Law and clearly

stated that the meaning of an allegedly libelous statement is determined under an objective standard: that of a reasonable reader.  *Id* at 144.  Citing the Supreme Court's rulings, the Ohio Courts determined that the dispositive question becomes whether a reasonable fact finder could conclude that the statements imply assertions of improper conduct.  *Id*.  In instances where an average reader of a column would be left with such an impression, the Court determined that the clear impact, general tenor, and impression created by an article could sustain a finding of malice via reckless disregard.  This is especially true where the quotations are "verbatim reports of statements made by the subject".  *Id.*  Thus, a Court is to assess the meaning of an allegedly libel statement from the prospective of a reasonable reader, and not the prospective of the publisher.

Defendant has gone to great lengths to say these statements were not libel. They attach affidavits, including the affidavit of Attorney Tyrrell in support of this.  However, these conclusions and opinions have no bearing on whether or not these statements are libelous.  As stated, it is the opinion of a reasonable reader and not that of the utterer.  In this instance a reasonable reader would look at the published statements and associate Mr. Trakas with criminal activity, bribery, theft in office, and a variety of other offenses against the public.  This is the standard which should be applied in determining whether or not judgment is appropriate.

Moreover, the Supreme Court of Ohio determined that the "common meaning ascribed to words by an ordinary reader are determinative in whether a libelous statement is false". *Id* at 144 citing *Vale v Plain Dealer Publishing Co*. 72 Ohio St. 3d. 279 (1995).  The Supreme Court of Ohio adopted a four-factor test for distinguishing whether a statement of fact is opinion or whether the reasonable perception of the statement becomes libel. *Id.*  This was done to prevent the situation where a publisher of false statements could "routinely escape liability for harmful and false assertions simply by advancing a "subjective" interpretation.  *Id.* at 145.

     *McKimm* went on to clearly state that the actual malice standard is **"not an impenetrable shield for the benefit of those who engage speech about public figures"**. *Id*. at 147. (Emphasis) The use of a lie as a tool is at odds with the premises of democratic government and with the order we manner in which economic, social, or political change is to be affected. *Id*. Thus, any false statement made with reckless disregard of the truth does not enjoin any constitutional protection. *Id*. The Supreme Court of Ohio addressed the similar situation wherein a cartoon depicting the commission of an illegal act was determined not to be a possible rational interpretation of events when the author has no basis to believe an illegal act has occurred. In this particular instance Trakas has been depicted as a cartoon (a puppet) and has been "photo-shopped" into pictures with Larry Householder.

     It can clearly be seen, as found in *McKimm*, that the Defendants intended to convey to the voters a false message and that their drawings unreasonably conveyed a message of improper conduct. *Id*. at 149. When bare facts appear in the context of a cartoon, it improperly illustrates conduct of criminal activity as is the case herein. Defendants however claim that *Milkovich v Lorain Morning Turner Co*., 497, U.S. 1 (1990) is instructive on this issue claiming statements that cannot reasonably be interpreted as stating actual facts about an individual are not actionable. Plaintiff suggests that a clear reading of this case provides a different conclusion.

     In *Milkovich*, the Court stated that public debate does not suffer from lack of imaginative expression or rhetorical hyperbole. The Court looked to whether or not statements were indeed false in addressing whether matters were expressed as those of opinion and not fact. In limiting the defense of opinion, the court clearly stated that the mere reference to a statement as being one of opinion does not create a wholesale defamation exemption for such statements. The Court went on to address such issues as to whether or not prefatory language such as "in my opinion"

could dispel factual implications made in the statement.  The Court was clear in that even language attempting to limit the effect of statements is not a wholesale exemption to the publication of materials which are patently false and defamatory.  Where articles do not use loose, figurative, or hyperbolic language negating impressions of misconduct, such language does not negate the impression of criminal activity.  *Id.* at 8.

The factors to be considered are: 1) the specific language used; 2) whether the statement is verifiable; 3) the general context of the statement; and 4) the broader context in which the statement appeared.  *Id.* citing *Scott v. News Herald* 25 Ohio St. 3d. 250 (1986).  Again, in laying out these factors, the Court was intent on reiterating the principle that there is no separate constitutional privilege for opinion when such opinions assert a fact.  *Id.* at 22.

Looking to this test it is clear that there is an objective finding that Defendants were making statements of fact in the general capacity of criminal conduct or theft.  The specific language used is addressed above.  Mr. Trakas is being reported as a crony, having enriched himself at the taxpayers' expense, having lived it up on the public dime, and other such statements which clearly indicate criminal.  There is no qualifying language such as "he may have been associated with" or "it's been reported that" or "in our opinion he has engaged in…" or "we have proof that he took public money".  Rather, the Defendants have made it clear that Mr. Trakas and his entity, Provost Academy, took State money, were involved with illegal kickbacks, and engaged in other crony activities supporting criminal activity.

The Defendants have also claimed that the statements were verifiable.  They attached several affidavits claiming that reliable news media sources were cited as proof of the statements.  What the Defendants conveniently omit is their knowledge of the falsity of these statements.  Mr. Householder was cleared of any criminal activity.  **Moreover, Mr. Everhart**

**was inextricably involved in this particular element of their claims**.  Mr. Everhart was, at the time, working on Mr. Householder's campaign in trying to defuse the obviously false statements that were made. (See affidavit of Trakas).  For the Defendants to say that they reasonably relied on newspaper articles from generally accepted publications is disingenuous.  When you have specific and detailed information that the article goes beyond the actual facts, and reports something contrary to your actual knowledge, you are engaged in reckless disregard for truth.

Furthermore, in regards to the general context of statements and the broader context in which it appears, there is no argument that these publications were meant to be defamatory, precise, personal attacks on the integrity of Mr. Trakas.  A reasonable reader cannot look at these and determine that they are hyperbole or statements of opinion.  As quoted above, "these are facts about Jim Trakas".  (See Defendants' Brief Exhibits)  This is a damming admission.

The Defendants pound their fists on the table and claim they are merely reporting facts. They are doing nothing of the sort.  They are picking and choosing matters, and circulating these "facts" out of context.  They make associations between people that are fifteen to twenty years apart. (See Affidavit of Trakas).  Mr. Trakas had very limited dealings with Mr. Householder during these investigations, and only as Members of The Ohio House of Representatives, including 97 other legislators.  The Defendants however ignore this decade and a half disassociation and clearly claim that Mr. Trakas is Mr. Householder's crony.

As noted by the Supreme Court there is no constitutional value in false statements of fact. *Milkovich* at Page 9.  Rather, the dispositive question becomes whether or not a reasonable fact finder could conclude that the statements made imply an assertion of criminal activity. *Id*. at 22. The right of a man to protection of his own reputation from unjustified invasion and wrongful hurt reflects no more than our basic concept of the essential dignity and worth of every human

being … a concept at the root of any decent system of ordered liberty.  *Id*.  The destruction that

defamatory falsehood can bring, is to be sure, beyond the capacity of law to redeem.  *Id*.

Moreover, in *Veil v The Plain Dealer Publishing Co*., 72 Ohio St. 3d. 279 (1995) as cited

by the Defendants, the Court opined that where alleged statements tied one to a political regime

are sufficiently odious, infamous, or ridiculous, a Complaint has properly stated a cause of action

for defamation.  In citing *Jankovitch v International Crisis Group*, 494 F. 3d. 1080 (D.C. Cir.

2007).  When a Plaintiff is described as a crony to someone alleged to have committed crimes,

that association has been determined to be enough to state a prima facie case for defamation.

**REGARDING APPLICATION OF LAW TO STATEMENTS MADE**

In *Boulger v Woods* 917 F. 3d. 471 (6th Cir. 2019) the Court went into a detailed

explanation of the four-factor test pertaining to protected opinion or actionable fact.  Each of

these factors will be examined in turn.

Specific Language Used.

Under the first factor the Court sought to determine whether the allegedly defamatory

statement has a precise meaning and is likely to give rise to a clear factual implication.  *Id*. citing

*Bentkowski Scene Mag.*, 637 F.3d 689, 693-94 (6th Cir. 2011).  In the Trakas materials, there is

very precise language being used.  To again quote the Defendants, "These are facts about

Trakas".  Trakas is accused of: 1) stealing public money; 2) deceiving the public; 3) being a

crony to Representative Householder and his alleged criminal activities; 4) and lying to

taxpayers.  There are rather precise meanings associated with each one of these allegations and

none are left open to interpretation here. There is no qualifying language that would lead a

reasonable reader to conclude other that he has been guilty of or associated with criminal

activity.  **A mere insinuation is as actionable as a positive assertion.**  *Id*. at 480.  (Emphasis)

<u>Verifiability</u>

Most of the statements made by the Defendants are either false, or are made with utter disregard for their truth.  As stated above Mr. Trakas has not taken one dime from the tax payers other than his fee no more than $125.00 to attend a meeting. (Affidavit of Trakas).  Moreover, Mr. Everhart is clearly aware that the statements made relating to illegal kickbacks and election rigging are false. (See Affidavit of Trakas).  There is absolutely no proof that Mr. Trakas was "livin' it up on our dime" or otherwise profiting from his association with the PROVOST ACADEMY school.  These are facts well known to the Defendants.  In fact, the opposition n research report that has been submitted as an exhibit to the affidavit of Mr. Tyrrell clearly establishes this.  There are many limiting factors that have been illustrated in this report.  A reading of the entire document clearly shows that the statements of the Defendants are exaggerations or outright untruths.

A statement is deemed verifiable if: 1) the author represents he has knowledge or evidence that substantiates the statements; and 2) there is a plausible method to verify those statements.  *Id*. at 481.  Even though there is no objective test to establish where someone's conduct is "scandalous" or that a person cares a good deal more about himself than others, Ohio Courts have held that an accusation of criminal conduct is an articulation of an objectively verifiable event.  In this instance there is no verification for these statements.

Mr. Trakas is clear in his affidavit, and the facts also support that he has never "lived it up on our dime" or otherwise improperly taken money from the public.  Furthermore, it is quite obvious that Mr. Trakas has never been a "crony" of Mr. Householder or otherwise participated in criminal activities that Mr. Householder was ultimately exonerated.  Given the Defendants' knowledge of the apparent falsehood of these statements, Defendants' arguments fail.

General Broader Sense of Content

Factors three and four are generally considered together.  *Bentkowski* at 695.  The general context is analyzed to determine "the larger objective in subjective context of the statement so that the alleged defamatory statements are not examined in isolation".  *Id.*  Put in another way, the Court considers the immediate context in which the defamatory statement appears.  *Id.* Although statements made in such forms as newspaper articles are often associated with hyperbole, and more likely to be opinion, Courts must examine the type of medium and issue and consider how it would influence the reader's viewpoint on whether a message is one of fact or opinion.  *Id*. at 482.  In this instance, the Defendants have through their OWN publications precisely claimed "these are facts about Mr. Trakas".  These "facts" include taking public money, lying to taxpayers, and being associated with illegal kickbacks and election rigging. These are allegations of criminal conduct.  There is nothing hyperbolic.  These are "statements of fact".  They are also false and verifiably so. The general context of these advertisements is clear. Mr. Trakas is being accused of criminal conduct, lying to taxpayers, and association with alleged criminals.  General context and reasonable reading of these materials clearly shows defamatory intent and reckless disregard for truth.

Innocent Construction

Only in the event where a statement may **reasonably be read** to have an innocent meaning does the innocent construction rule command it be deemed non-defamatory.  *Id*. at 483. (Emphasis)  In this instance, there is no innocent meaning.  The nature of the articles, in terms of portraying Jim as a puppet, a liar, and a thief, do not lend themselves to any innocent construction of opinion or hyperbole.  Rather, he is being directly accused of a "scam" on the taxpayers and having enriched himself on taxpayer dollars.  Similarly egregious is the claim in

Defendants' brief claiming Trakas received $185,000.00 in campaign donations.  This is a false statement (See Trakas Affidavit) yet Defendants make this with reckless disregard to the truth.

As to Statements being Substantially True

The presentation of truth by the Defendants is suspect.  Are the Defendants honestly stating that Mr. Trakas literally scammed taxpayers?  Are they stating that he is literally a crony?  Are they literally stating that he stole money from taxpayers?  It is curious that these words are used by the Defendants in support of these spurious allegations.  As can be seen by their own documentation (the Opposition Research) and Trakas' affidavit none of these statements are true.

Similarly, the quotation of *Medic Services Corp. v E.W. Scripps Co*. 61 Ohio App. 3d. 752 (1st Dist. 89) really does nothing to establish Defendants' case.  Therein the Court noted that the Plaintiff need only prove a prima facie case of falsity in order to take the matter to a jury.  In this instance Mr. Trakas has provided us exactly that.  The statements made are false, taken out of context, and portray him to be a common criminal.

Defendants have stated that the charter school over billed the State by $800,000.  This is false.  After an intense audit by the State of Ohio, DONE AT THE DIRECTION OF TRAKAS less than $200,000.00 was found to have been "over billed" (and returned).  Furthermore, Mr. Trakas had absolutely no control over the activities of PROVOST ACADEMY.  Rather he merely sat on the Board in regards to its directives.  He had absolutely no control over billing and was completely exonerated from any wrong doing.

Consequently, the statement that he and his company lined their pockets is patently false.  Defendant takes great issue with the statement of this in claiming he was lining "his pockets".  However, grammar dictates that Mr. Trakas is included in the use of the word "their" and that the implication of him lining his own pockets is appropriate.  The Defendants clearly make this

indication and clearly state that Mr. Trakas is taking taxpayer money.  Nothing of the sort

transpired and this statement is patently false contrary to the assertions of Defendants.

**STATEMENTS ABOUT HOUSEHOLDER**

Defendants make serious issue that the statements made about Larry Householder are

"not statements about Trakas".  However, the concept of being a crony implicates Mr. Trakas in

these type of activities. Furthermore, Defendants state that the accusations made about Mr.

Householder are true.  Nothing could be farther from the truth.

Mr. Householder was absolutely vindicated of any such charges. (See Affidavit of

Trakas).  Thus, to associate Mr. Trakas with these type of activities, through the general tenor

and reading of this advertisement, leads the reasonable reader to believe Mr. Trakas is associated

with these activities.  This is obvious from the face of this circular.  Furthermore, there is no

evidence that Mr. Trakas was involved in the Householder campaign between 2004 and 2006.

To the contrary Mr. Trakas has disassociated himself with Mr. Householder and was "out of his

favor" during this particular time period. (See Affidavit of Trakas).  **Mr. Everhart was**

**intimately aware of this** having produced campaign materials for Mr. Householder attempting

to vindicate him of these activities. (See Affidavit of Trakas).  How Mr. Everhart could be so

involved in someone's campaign, yet support a motion for summary judgment escapes the

imagination.  Furthermore, ignoring the results of the FBI investigation, is, to say the least,

disingenuous.  The general "gist or sting" of the challenge advertisement is exactly the opposite

of what the Defendants propound.  The gist and sting of the article are an attack the reputation of

Mr. Trakas as participating or sponsoring illegal activities

**REGARDING MALICE**

Unfortunately the arguments presented by the Defendants are not persuasive.  The Defendants claim that they "relied on reputable news sources" as well as opinion (Tyrrell's statement seemingly submitted as an expert opinion).  Unfortunately this is disingenuous.  We need only look to the Opposition Report that was attached to the Defendants' motion to see that there is significant evidence of malice.

As verified by Mr. Trakas' affidavit, CAPAC as well as their attorneys, directors, and outside consultants were provided a great deal of information.  The opposition research that was not only contains the particular statements that were handpicked and artfully published, but significant material which clearly identifies knowledge on behalf of the Defendants as it relates to the truth or accuracy of the statements made in these circulars.  All parties involved knew there was no truth to the statement that either Mr. Trakas or his company were ever "lining their pockets".  In fact in the opposition research it is quite clear that the Columbus Dispatch article accurately reports that a dispute existed, but between Edison Learning and the Ohio Department of Education and this article does not list Jim as being a perpetrator of any wrongs.  Thus, to state otherwise is a false implication that the Defendants clearly had knowledge of.

We may also refer to Mr. Trakas' affidavit to completely discredit any statements made by Mr. Everhart or anyone who spoke to Mr. Everhart.  As can clearly be seen by the affidavit, it is replete with references to Mr. Everhart having worked closely with Mr. Trakas and Mr. Householder during these periods in question.  Mr. Everhart was on notice that the allegations were false and he was even producing media replies to that effect.  For him or anyone he spoke with to assert truth as a defense is nothing more than a self-serving argument.  Defendants claim case law supports the proposition that a publisher of a phrase has no duty to personally investigate and may rely on sources certainly.  However, and in this instance, it bears no use to

the facts and circumstances.  The opposition research is replete with articles, quotations, statements, and research which clearly shows that the statements being made about Mr. Trakas are indeed false.  The fact that they chose to ignore those portions of the opposition research report is significant.  They admit doing research and investigations.  However, they merely wish to present only portions of that suit their purpose.

In a blatant attempt to skirt Defendants not having produced an expert report, Defendants now attempt to introduce the affidavit of Attorney Tyrrell.  Defendants believe that his review of the information and affirmation of its "integrity" absolves them from liability.  Unfortunately the only case law which supports this proposition comes out of the State of New York which is not part of the Sixth Circuit and hardly persuasive.  What the Defendants are trying to do is whitewash their intentional and purposeful actions by way of an attorney review.  If we hold this to be a standard for the establishment of malice, or the establishment of non-malign intent, we simply open the door to getting the proverbial "note from your mother".  Anyone who wishes to say something defamatory could merely say that their attorney reviewed it so it must be okay.

In this instance the Defendants obviously felt the statements were exceptionally strong. Otherwise we would have to question why they sought the advice of counsel in the first place.  If they truly believed the statements were not hurtful then they would not have needed an independent attorney, known for these type of opinions, to provide his "blessing".  It is quite reasonable to infer the Defendants knew what they were up to and were merely seeking an avenue to insulate themselves from statements they knew were patently false and destructive.

Again, we refer to the extensive and well thought out affidavit of Mr. Trakas.  Therein he identified several instances of conduct, points to specific fact known by the parties, and otherwise illustrates the malice exercised by the Defendants.  It is clear the Defendants knew

these statements were false and merely attempted to shield themselves from liability through a third party.

**REGARDING DAMAGES**

Contrary to the statements made in Defendants' Motion for Summary Judgment, Mr. Trakas has identified damages outside of his salary which he believes is entitled to.  (See Petrea Report Exhibit A).  The Complaint clearly illustrates that his reputation has been publicly damaged.  Although his response to Interrogatory No. 11 may not have been as illustrative as the Defendants liked, we may pose the question as to why the Defendants did not take any other opportunity to engage in discovery, such as depositions, after the issuance of the responses to their written discovery.  The burden of obtaining discovery is on the person seeking discovery and not the other way around.  Defendants cannot overlook its lack of zeal and efforts.

For the sake of efficiency Mr. Trakas incorporates all of the arguments made previously in regards to the Defendants' Motion in Limine as it regards the expert opinion of Jonathan Pertrea.  The Defendants have spent the remaining several pages of their Motion for Summary Judgment reiterating the same arguments.  Consequently, there is no need to reprint those exact arguments as they are already before this Court and illustrated in the pending motion.

CONCLUSION

In this instance the Defendants have moved for summary judgment.  Such an action by this Court is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, to go with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  *BF Goodrich Co. v United States Filter Corp*. 245 F. 3d. 587, 591 (6th Cir. 2001).  In deciding a motion for summary judgment the Court views the factual evidence and draws all reasonable inferences in favor of

the nonmoving party.  Id. citing *National Enterprises Inc. v Smith*, 114 F. 3d.  561, 563 (6th Cir. 1997).  To prevail the non-movant must show sufficient evidence to create a genuine issue of material fact.  Id. citing *Klepper v First Am. Bank* 916 F. 2d. 337 (6th Cir. 1990).

When looking at the evidence that has been submitted in this case, particularly the advertisements attached to the Complaint and the Motion for Summary Judgment, the only reasonable inference here is that the Defendants intended to harm Plaintiff.  The affidavit of Mr. Trakas clearly establishes the fact Defendants knew the statements were taken out of context, or were patently false.  The opposition research document is replete with references to contrary facts that were purposefully published by the Defendants.  There were conscious decisions made on what to print, who to deliver it to, and what the intended effect was.  If we draw these reasonable inferences in Mr. Trakas' favor, here exists at a minimum questions of material fact.

The statements made by the Defendants cannot be proven as true and the defense associated with truth is unavailable.  They knowingly lied or published statements with reckless disregard for the truth.  The reasonable reader would infer criminal conduct by Mr. Trakas.  The reasonable reader would believe Mr. Trakas "lined his pockets" or otherwise "enriched himself" at taxpayer expense.  As addressed above there is nothing here that is an expression of opinion.  Rather, this is a very calculated and precise attack on a man's general character and reputation within his communities.  With negligence per se damages are presumed.  It is quite obvious that Mr. Trakas' reputation has been tarnished irreparably by the publication of these false statements and false associations.  The Defendants have not sustained their burden under Rule 56 and summary judgment should be denied.

Respectfully submitted,

/s/ *David J. Horvath*